JSC SECURITIES, INC., Aircast, Inc., the Flanagan Trust, Jane Flanagan Trustee, Daniel Flanagan, Jane Flanagan, and Raymond Mando, Plaintiffs,

v.

John J. GEBBIA, Daniel Cunningham, Robert Mannion, Martin Kaplan, Securities Settlement Corporation, Uniroyal Plastic Acquisition Corp., the Jesup Group, Inc., Community National Bank and Trust Company of New York (NA), Howard R. Curd, Howard F. Curd, Keith E. Johnson, Thomas E. Constance, Jonathan R. Furer, Ronald P.E. Leeds, and Robert Weninger, Defendants.

Betty BEATUS, Ida Z. Small, and Howard Beatus, Plaintiffs,

v.

John J. GEBBIA, Daniel Cunningham, Robert Mannion, Jesup Josephthal Securities Group, Inc., Howard R. Curd, Howard F. Curd, Keith E. Johnson, Thomas E. Constance, Jonathan R. Furer, Ronald P.E. Leeds and Robert Weninger, Defendants.

Dorothy HORGAN, Carol Levine, Max Levine, Steven B. Jossem, and Richard Schwartzkopf, Plaintiffs,

v.

John J. GEBBIA, Daniel Cunningham, Robert Mannion, Martin Kaplan, Securities Settlement Corporation, the Jesup Group, Inc., Howard R. Curd, Howard F. Curd, Keith E. Johnson, Thomas E. Constance, Ronald P.E. Leeds, and Robert Weninger, Defendants.

Nos. 91 CIV. 8647(JES), 92 CIV. 6503(JES) and 92 CIV. 7101(JES).

United States District Court, S.D. New York.

March 31, 1998.

Bressler, Amery & Ross, New York, NY, Bernard Bressler, of Counsel, for Plaintiffs JSC Securities, Inc., Aircast, Inc., the Flanagan Trust, Jane Flanagan, Daniel Flanagan, Raymond Mando, Dorothy Horgan, Carol Levine, Max Levine, Steven B. Jossem.

Christopher Lovell, P.C., New York, NY, Christopher Lovell, of Counsel, for Plaintiffs Betty Beatus, Ida Z. Small, Howard Beatus.

Morvillo, Abramowitz, Grand, Iason & Silberberg, New York, NY, Lawrence S. Bader, Jill K. Israeloff, of Counsel, for Defendants John J. Gebbia, Daniel Cunningham, Robert Mannion, Securities Settlement Corporation.

Camhy, Karlinsky & Stein, New York, NY, Ronald D. Lefton, of Counsel, for Defendants Uniroyal Plastic Acquisition Corp., the Jesup Group, Inc., Howard R. Curd, Sr., Keith E. Johnson, Robert Weninger.

Rogers & Wells, New York, NY, Joseph Ferraro, of Counsel, for Defendant Thomas E. Constance.

Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, NJ, Steven Adler, of Counsel, for Jonathan R. Furer.

Brian W. Guillorn, P.C., New York, NY, Brian Guillorn, of Counsel for Defendant Ronald P.E. Leeds.

Ohrenstein & Brown, New York, NY, John Paul Fulco, of Counsel for Defendant Howard F. Curd, Jr..

D'Amato & Lynch, New York, NY, Kevin Windels, of Counsel, for Defendant Martin Kaplan.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs JSC Securities, Inc. ("JSC"), Aircast, Inc., the Flanagan Trust, Jane Flanagan, Daniel Flanagan and Raymond Mando (collectively the "JSC plaintiffs") bring the instant action, *JSC Securities, et al. v. Gebbia, et al.*, 91 Civ. 8647(JES) (the *"JSC* action"), against defendants Securities Settlement Corporation ("SSC"), John J. Gebbia ("Gebbia"), Daniel Cunningham ("Cunningham"), Robert Mannion ("Mannion"), Howard F. Curd, Jr. ("Curd, Jr."), and Martin Kaplan [1] ("Kaplan") (collectively the "Securities Group Defendants"), against defendants Howard R. Curd, Sr. ("Curd, Sr."), Keith E. Johnson,[2] Thomas E. Constance, Ronald P.E. Leeds, Robert Weninger (collectively, the "Jesup Group Defendants"), and Jonathan R. Furer,[3] and against defendants The Jesup Group, Inc. ("The Jesup Group"), Uniroyal Plastic Acquisition Corp. ("UPAC"),[4] and

---

1. By Stipulation and Order dated May 23, 1994, all claims against Martin Kaplan were dismissed with prejudice.

2. By Order dated November 9, 1995 the three related actions were suspensed as to defendant Keith E. Johnson, after he filed a petition for personal bankruptcy.

3. By Voluntary Dismissal Order dated April 9, 1992, all claims by the JSC plaintiffs against Jonathan R. Furer were dismissed with prejudice. Furer remains a defendant in the related action *Beatus, et al. v. Gebbia, et al.*, 92 Civ. 6503(JES).

4. By notice filed on September 4, 1992 the action by the JSC plaintiffs against UPAC was automatically stayed when UPAC filed a petition for bankruptcy. The JSC plaintiffs later obtained permis-

Community National Bank & Trust Company of New York, N.A. ("CNB").[5]

Plaintiffs Dorothy Horgan, Carol Levine, Max Levine, Steven B. Jossem and Richard Schwartzkopf[6] (collectively the "Horgan plaintiffs") bring the instant related action, *Horgan, et al. v. Gebbia, et al.*, 92 Civ. 7101(JES) (the "*Horgan* action"), against the Securities Group Defendants, the Jesup Group Defendants and The Jesup Group.

Plaintiffs Betty Beatus, Ida Z. Small and Howard Beatus (collectively the "Beatus plaintiffs") bring the instant related action, *Beatus, et al. v. Gebbia, et al.*, 92 Civ. 6503(JES) ("the *Beatus* action"), against Jesup Josephthal Securities Group, Inc. ("JJSG"), Jonathan R. Furer, the Securities Group Defendants, and the Jesup Group Defendants.[7]

In each related action, plaintiffs assert, *inter alia*, that defendants violated Section 10(b) of the Securities and Exchange Act ("the Exchange Act"), Title 15 U.S.C. § 78(b), and Rule 10b–5 promulgated thereunder ("Rule 10b–5"); Section 20(a) of the Exchange Act, Title 15 U.S.C. § 578(e); the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(a), (b) and (c), and conspired to violate RICO, 18 U.S.C. § 1962(d); committed common law fraud and fraudulently converted assets.

Pursuant to Fed.R.Civ.P. 56(c), the Securities Group Defendants, The Jesup Group, UPAC, and the Jesup Group Defendants move for summary judgment on the grounds of res judicata and collateral estoppel in the *JSC* and *Horgan* actions. For the reasons set forth below, defendants' motions for summary judgment are granted.

**BACKGROUND**

*The JSC Transaction*

On May 4, 1990, Josephthal & Co., a New York corporation engaged in the retail securities business and a member of the New York Stock Exchange ("NYSE"), entered into a purchase and sale agreement with defendant JJSG, a Delaware holding company, and its subsidiary Jesup & Lamont, Inc. ("J & L"). *See* JSC Amended Complaint ("JSC Am. Compl.") ¶¶ 11, 12, 31. Thereafter, on May 25, 1990, Josephthal & Co. sold its operating assets to J & L in exchange for $6 million in cash and a $3 million contingent note issued by JJSG[8] (hereinafter the "JSC Transaction"). *See* JSC Amended Complaint ("JSC Am. Compl.") ¶¶ 5, 11, 27, 31. Upon the closing, Josephthal & Co. changed its name to JSC Securities, Inc. (herein plaintiff JSC). *See id.* ¶ 31.

Pursuant to the purchase agreement, the individual JSC and Horgan plaintiffs sold and rolled over their subordinated debentures issued by Josephthal & Co. in order to purchase subordinated debentures from JJSG, *see* Defendants' Local Civil Rule 3(g) Statement ("Def.3(g) Stmt.") ¶¶ 22–24; *see also* JSC Am. Compl. ¶ 27, Horgan Complaint ("Horg.Compl.") ¶ 23, and the Beatus plaintiffs exchanged their secured demand notes issued by Josephthal & Co. for secured demand notes issued by defendant SSC, a Delaware corporation engaged in the business of acting as a clearing broker and the wholly-owned subsidiary of JJSG. *See* Beatus Amended Complaint ("Beatus Am. Compl.") ¶¶ 7, 24(c); JSC Am. Compl. ¶¶ 11, 12. In

sion from the bankruptcy court to proceed with this litigation. UPAC was dissolved in 1996.

**5.** By Stipulation and Order dated April 10, 1992, all claims against CNB were dismissed without prejudice.

**6.** By Stipulation and Order dated September 13, 1995, plaintiff Richard Schwarztkopf withdrew all claims.

**7.** By Stipulation dated September 28, 1994, all claims by the Beatus plaintiffs against defendants John J. Gebbia, Daniel Cunningham, Robert Mannion and JJSG were dismissed with prejudice. On March 2, 1998, the remaining defen-

dants in the Beatus action withdrew all pending motions for summary judgment without prejudice to being renewed. *See* Notice to Withdraw Motions dated March 2, 1998.

**8.** The parties covenanted that the amount of the plaintiffs' promissory note would be reduced in the event that JSC's retail sales did not reach agreed-upon levels. Pursuant to the transaction, defendant JJSG tendered to plaintiff JSC a lump payment of $6 million, which was financed by CNB. *See* JSC Am. Compl. ¶ 27; Beatus Am. Compl. ¶ 23; Plaintiffs' Counter 3(g) Statement ¶ 2.

January 1991, JJSG defaulted on all of its obligations incurred under the JSC Transaction. *See* The Jesup Group Defendants' Supplemental Notice of Motion for Summary Judgment dated August 30, 1995 ("Defs.' Supp. Not. Mot."), Exh. F (*Jesup, Josephthal Sec. Inc., et al. v. JSC Inc., et al.*, Index No. 108219/95 Final Disposition dated July 12, 1995) (hereinafter the "July 12, 1995 Decision"). At all times relevant times, individual defendants Gebbia, Cunningham, Mannion and Curd, Jr., were officers and directors of JJSG, *see id.* at ¶¶ 11, 13–15, and Gebbia and Curd, Jr. were, at some or all relevant times, shareholders of JJSG's parent company. *Id.* at ¶¶ 11, 15.

Plaintiffs allege that in order to induce Josephthal & Co. to sell its assets and acquire this contingent note, and to induce the JSC and Horgan plaintiffs to invest in JJSG's debentures and to induce the Beatus plaintiffs to invest in SSC's secured notes, certain defendants made material and fraudulent misrepresentations regarding JJSG's and SSC's operating and financial conditions. *See* JSC Am. Compl. ¶¶ 28–29, 42–44; Horgan Compl. ¶¶ 24–25, 38–40; Beatus Am. Compl. ¶¶ 26–28, 39–41. Plaintiffs further assert that certain defendants failed to disclose that JJSG was secretly controlled by, *inter alia,* defendants The Jesup Group, UPAC, Furer, and the Jesup Group Defendants. *See* JSC Am. Compl. ¶¶ 52, 74–79; Horgan Compl. ¶¶ 48, 61–66; Beatus Am. Compl. ¶¶ 29, 67–70. Plaintiffs claim that in September 1988, The Jesup Group, a Delaware holding company, through its wholly-owned subsidiary UPAC, a Delaware corporation engaged in the manufacture and sale of plastics and rubber-based products, sold all of its stock in JJSG to Jesup Securities Acquisition Corp., a holding company equally owned by Gebbia, Curd, Jr. and Furer. *See* JSC Am. Compl. ¶¶ 17, 26; Horgan Am. Compl. ¶ 62; Beatus Am. Compl. ¶ 67; *see also* Plaintiffs' Exhibit Binder # 1 to Memorandum in Opposition to Motions of Defen-

dants ("Pls.' Exh. Binder") Exh. 16 at 3–4.[9] Plaintiffs claim that this sale was not a bona fide arm's length transaction but was instead intended to create a mechanism by which The Jesup Group, UPAC and Curd, Sr. could secretly retain control of JJSG and later reacquire the record ownership of its stock or assets at no cost, while defrauding JJSG's and SSC's creditors for their personal benefit. *See* JSC Am. Compl. ¶¶ 26, 77; Horgan Compl. ¶ 64; Beatus Am. Compl. ¶ 69. Plaintiffs claim that throughout the events at issue Gebbia, Cunningham, Curd, Sr., Curd Jr., The Jesup Group, and UPAC continued to secretly control JJSG and are therefore vicariously liable to plaintiffs for JJSG's acts. *See* JSC Am. Compl. ¶¶ 26, 30, 44, 74, 81–84; Horgan Compl. ¶¶ 26, 40, 61, 69; Beatus Am. Compl. ¶¶ 22, 41, 74–76.

At all relevant times, the Jesup Group Defendants were the officers and directors of both The Jesup Group and UPAC, *see id.* at ¶¶ 19–21, 23, 24, and Curd, Sr. was a principal shareholder of The Jesup Group. *Id.* at ¶ 19. At one time co-defendant Mannion was the chief financial officer of UPAC. *Id.* at ¶ 14. Until on or about October 2, 1988, co-defendant Jonathan R. Furer was an officer and director of The Jesup Group, *see id.* at ¶ 22, and between on or about October 2, 1988 and April 12, 1990, Furer was an officer of JJSG and a shareholder in JJSG's parent company. *Id.* Neither The Jesup Group, UPAC, Furer, nor any of the Jesup Group Defendants were joined as parties in the NYSE arbitration.

*The NYSE Arbitration*

On December 23, 1991, the JSC plaintiffs commenced arbitration against JJSG, Gebbia and Cunningham before the New York Stock Exchange (the "NYSE"). *See* JSC Plaintiffs' Statement of Claim ("JSC Stmt. Claim"); *see also* JSC Am. Compl. ¶ 11. On September 30, 1992, pursuant to an arbitration agreement in the debenture contract, the Horgan plaintiffs commenced arbitration against JJSG before the NYSE. *See* Horgan Plain-

---

**9.** Sometime early in 1990, Gebbia and Curd, Jr. bought out Furer's share, resulting in each then holding a 50% stake in JJSG, and JJSG sold the stock of its subsidiary, J & L Securities, to UPAC, The Jesup Group's subsidiary. *See* Plaintiffs' Counter 3(g) Statement, filed in support of Plain-

tiffs' Opposition to Defendants' Summary Judgment Motion, dated July 14, 1994 ("Pls.' Counter 3(g) Stmt."), ¶ 9. Shortly thereafter, Gebbia bought out Curd, Jr., taking 100% ownership in JJSG. *See id.*

tiffs' Statement of Claim ("Horg.Stmt. Claim"). Subsequently, the two arbitration actions were consolidated (the "NYSE arbitration").[10] *See* Defs.' Supp. Not. Mot., Exh. E (NYSE Arbitration Decision, dated September 16, 1994).

At the NYSE arbitration, the claimants alleged, *inter alia,* that in order to induce JSC to sell its assets and to acquire the contingent note from JJSG, and in order to induce the JSC and Horgan plaintiffs to invest in JJSG debentures, JJSG and the Securities Group Defendants made fraudulently misleading statements regarding the operations and financial condition of JJSG. These statements were alleged to have been made in furtherance of a conspiracy between JJSG, the Securities Group Defendants, the Jesup Group Defendants and other named defendants to mislead persons doing business with JJSG. *See* JSC Stmt. Claim ¶¶ 11(b)(I), (d), Exh. A (JSC Am. Compl. ¶¶ 26, 28, 30, 44, 74, 81–84.); Horg. Stmt. Claim ¶¶ 13(b)(I), (d), Exh. A (Horgan Compl. ¶¶ 26, 40, 61, 69).

The JSC plaintiffs asserted six claims and the Horgan plaintiffs asserted four claims at the NYSE arbitration. *See* JSC Stmt. Claim ¶¶ 13–51; Horg. Stmt. Claim ¶¶ 14–36. Each asserted a contract claim for payment of interest and principal due on the promissory note and/or the debentures. *See* JSC Stmt. Claim ¶¶ 10, 13–27; Horg. Stmt. Claim ¶¶ 9, 14–21. Further, all of the claimants asserted claims against JJSG for violations under Section 10(b) of the Exchange Act and Rule 10b–5, RICO, common law fraud, and conspiracy. *See* JSC Stmt. Claim ¶¶ 11, 28–33, 41–45; Horg. Stmt Claim ¶¶ 12, 22–31. In addition, plaintiffs JSC, Daniel Flanagan and Mando also asserted claims against defendants Gebbia and Cunningham, alleging violations of Section 10(b), Rule 10b–5, RICO, common law fraud and conspiracy, *see* JSC Stmt. Claim ¶¶ 28–33, 41–45, and alleging the improper distribution of JJSG's assets for their own personal use. *See id.* ¶¶ 34–40.

Both the JSC plaintiffs and the Horgan plaintiffs attached a copy of the original complaint filed in the *JSC* action and *Horgan* action, respectively, as exhibits to their statements of claim and incorporated paragraphs of the complaint within. *See* JSC Stmt. Claim, Exh. A; Horg. Stmt. Claim, Exh. A. Further, although all claimants made general allegations of "a complicated scheme by the former owners of" JJSG, *see* JSC Stmt. Claim ¶ 11 at 6; *see also* Horg. Stmt. Claim ¶ 12, involving "secret control over [JJSG] by other defendants in the Law Suit which constituted a fraudulent nondisclosure to claimants of material facts," JSC Stmt. Claim ¶ 11(d) (incorporating JSC Compl.¶ 42(c) allegations of ownership and control by The Jesup Group or the Jesup Group Defendants); *see also* Horg. Stmt. Claim ¶ 13(d) (incorporating Horgan Compl. ¶ 38(b), (c) allegations of benefit to and control by The Jesup Group or the Jesup Group Defendants), neither the JSC plaintiffs nor the Horgan plaintiffs asserted claims at the NYSE arbitration under Section 20(a) of the Exchange Act.

On September 16, 1994, after seventy-one hearing sessions, the NYSE arbitrators issued a unanimous written decision (hereinafter the "NYSE Arbitration Award"), finding that all claimants except Daniel Flanagan were entitled to recover from JJSG the defaulted amounts claimed as interest and principal due on the promissory note and debentures. *See* Defs.' Supp. Not. Mot. Exh. E (NYSE Arbitration Decision, dated September 16, 1994, ¶¶ 1–3). As to the remaining[11] Section 10(b), Rule 10b–5, common law fraud and conspiracy claims asserted against JJSG, Cunningham and Gebbia, the arbitration decision stated that "[a]ll other claims ... submitted to this Panel, are denied in their entirety." *Id.* at ¶ 4. On July 12, 1995, the NYSE Arbitration Award was confirmed, over plaintiffs' objections, by Justice Salvador Collazo in the New York State Supreme Court, New York County. *See id.* Exh. F (*Jesup, Josephthal Sec. Inc., et al. v. JSC*

---

10. The Beatus plaintiffs did not participate in the NYSE arbitration.

11. In a decision issued January 12, 1994, the NYSE arbitrators granted respondents' motion to dismiss claims 4 (improper distribution of assets) and 5 (RICO) asserted by the JSC plaintiffs and claim 3 (RICO) asserted by the Horgan plaintiffs. *See* Defs.' Supp. Not. Mot. Exh. F (NYSE Arbitration Decision dated January 12, 1994).

*Inc., et al.*, Index No. 108219/95 Final Disposition dated July 12, 1995) (hereinafter the "July 12, 1995 Decision").

*The Present Litigation*

The JSC plaintiffs and the Horgan plaintiffs also brought their related actions in federal district court, asserting the aforementioned claims but this time against only those defendants against whom they did not assert claims at the NYSE arbitration. *See supra* at 245–246. The Beatus plaintiffs, who were not parties to the NYSE arbitration, also brought their related action herein.

In these related actions, plaintiffs assert, *inter alia*, claims that all or some of the Securities Group Defendants violated Section 10(b) of the Exchange Act and Rule 10b–5, *see* JSC Am. Compl. ¶¶ 31–50; Horgan Compl. ¶¶ 27–46; Beatus Am. Compl. ¶¶ 30–50; committed common law fraud and fraudulently converted assets, *see* JSC Am. Compl. ¶¶ 51–54, 60–63; Horgan Compl. ¶¶ 47–50, 56–59; Beatus Am. Compl. ¶¶ 51–64; assert claims that The Jesup Group and the Jesup Group Defendants conspired to violate Section 10(b) of the Exchange Act, Rule 10b–5, and to commit common law fraud, *see* JSC Am. Compl. ¶¶ 73–80; Horgan Compl. ¶¶ 60–67; Beatus Am. Compl. ¶¶ 65–72; assert claims against JJSG, The Jesup Group, UPAC, Gebbia, Cunningham, Curd, Sr. and Curd, Jr. for control group liability under Section 20(a) of the Exchange Act, *see* JSC Am. Compl. ¶¶ 81–84; Horgan Compl. ¶¶ 68–71; Beatus Am. Compl. ¶¶ 73–76; and assert claims against almost all of the named defendants for violations of RICO.[12] *See* JSC

12. For the sake of clarity, the following chart is provided detailing the parties involved in the NYSE arbitration and the instant cases. A more complete chart of the parties involved and claims asserted at the NYSE arbitration and in the instant federal actions is set forth at Appendix A.

the NYSE Arbitration

| JSC<br>D. Flanagan<br>Mando<br>Aircast | *against* | JJSG<br>Gebbia<br>Cunningham |
| --- | --- | --- |
| Flanagan Trust<br>J. Flanagan<br>Horgan<br>C. Levine<br>M. Levine<br>Jossem | *against* | JJSG |

Federal actions herein

the JSC action

| JSC<br>D. Flanagan<br>Mando<br>Aircast<br>Flanagan Trust<br>J. Flanagan | *against* | the Securities Group Defendants<br>the Jesup Group Defendants<br>The Jesup Group<br>UPAC |
| --- | --- | --- |

the Horgan action

| Horgan<br>C. Levine<br>M. Levine<br>Jossem | *against* | the Securities Group Defendants<br>the Jesup Group Defendants<br>The Jesup Group |
| --- | --- | --- |

the Beatus action

| B. Beatus<br>Small<br>H. Beatus | *against* | Curd, Jr.<br>Jonathan R. Furer<br>the Jesup Group Defendants<br>The Jesup Group |
| --- | --- | --- |

Am. Compl. ¶¶ 31–50; Horgan Compl. ¶¶ 72–80; Beatus Am. Compl. ¶¶ 77–85.

Pursuant to Fed.R.Civ.P. 56(c), the Securities Group Defendants move for summary judgment in the *JSC* and *Horgan* actions on the grounds of res judicata and collateral estoppel. Defendants The Jesup Group, UPAC and the Jesup Group Defendants move for summary judgment in the *JSC* and *Horgan* actions on the grounds of collateral estoppel.

## DISCUSSION

*Effect of State Court Confirmation of Arbitration Award*

 Under the full faith and credit statute, *see* 28 U.S.C. § 1738, a federal court must give a state court judgment the same preclusive effect as would the courts of the state in which said judgment was rendered. *See Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *see also* Jack H. Friedenthal, et al., CIVIL PROCEDURE, § 14.15 (2d ed.1993). Where, as here, a state court has confirmed an arbitration award and entered final judgment, this Court must accord such decision full faith and credit and treat the July 12, 1995 Decision of the New York State Supreme Court as would other New York courts. *See Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir.1996); *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir.1996); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996); *Hatzlachh Supply, Inc. v. Moishe's Electronics Inc.*, 848 F.Supp. 25, 28 (S.D.N.Y.1994); *Grafstrom v. Bear, Stearns & Co.*, 1986 WL 13806 at *1 (S.D.N.Y.1986); *Adelstein v. Carnival Carting, Inc.*, No. 82 Civ. 3060, slip op. at 2 (S.D.N.Y. March 2, 1983) (giving full faith and credit to arbitration award confirmed in New York state court). Therefore, this Court must look to New York law to determine what preclusive effect the July 12, 1995 Decision has upon the *JSC* and *Horgan* actions. *See Ferris v. Cuevas*, 118 F.3d 122, 125–26 (2d Cir.1997); *see also Johnson*, 101 F.3d at 794; *Grafstrom*, 1986 WL 13806 at *1.

*The Doctrine of Res Judicata*

 Under New York law, the doctrine of res judicata "gives 'binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein.'" *Ferris*, 118 F.3d at 126 (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970) (internal quotations omitted)). Res judicata operates to "preclude the litigation of matters that could have or should have been raised in a prior proceeding arising from the same 'factual grouping,' 'transaction,' or 'series of transactions.'" *Bd. of Managers of Windridge Condominiums One v. Horn*, 234 A.D.2d 249, 250, 651 N.Y.S.2d 326 (2d Dept.1996) (citations omitted); *see also O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981) ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."); *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 118, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956) ("an existing final judgment rendered upon the merits by a court of competent jurisdiction, is binding upon the parties and their privies in all other actions or suits on points and matters litigated and adjudicated in the first suit or which might have been litigated therein."); Friedenthal, *supra* § 14.7.

 Res judicata applies to a confirmed arbitration award entered as a judgment. *See e.g. Katz v. Financial Clearing & Services Corp.*, 794 F.Supp. 88, 95 (S.D.N.Y. 1992) (in federal action following confirmation of NYSE arbitration award in New York state court, "res judicata binds not only as to every matter offered and received, but also as to any other admissible matter which might have been offered for that purpose"); *see also Ufheil Construction Co. v. Town of New Windsor*, 478 F.Supp. 766, 768 (S.D.N.Y.1979), *aff'd*, 636 F.2d 1204 (2d Cir. 1980); *Corto v. Lefrak*, 155 A.D.2d 246, 546 N.Y.S.2d 856, 857 (1st Dep't 1989), *app. de-*

*nied,* 75 N.Y.2d 707, 554 N.Y.S.2d 476, 553 N.E.2d 1024 (1990) (all claims arising out of licensing agreement that were determined or could have been determined at a prior arbitration cannot be raised in court); *McNally Int'l Corp. v. New York Infirmary–Beekman,* 145 A.D.2d 417, 535 N.Y.S.2d 388, 388 (2d Dep't 1988), *app. denied,* 74 N.Y.2d 605, 543 N.Y.S.2d 398, 541 N.E.2d 427 (1989).

■ All plaintiffs in the *JSC* and *Horgan* actions were claimants in the NYSE arbitration and asserted claims therein against JJSG, Gebbia and/or Cunningham involving the same transactions and operative facts asserted in the instant actions.[13] *Compare* JSC Stmt. Claim ¶¶ 28–33, Horg. Stmt. Claim ¶¶ 22–26 (claiming JJSG violated Section 10(b) of the Securities and Exchange Act and Rule 10b–5, committed common law fraud, and conspiracy) *with* JSC Am. Compl. ¶ 31–50, 51–59, 74–80, Horg. Compl. ¶ 27–46, 47–67 (same); *and* JSC Stmt. Claim ¶¶ 34–40 (claims against Gebbia and Cunningham for improper distribution of JJSG assets for personal use) *with* JSC Am. Compl. ¶ 61–63 (conversion and fraud); Horgan Compl. ¶¶ 56–59 (same); *and* JSC Stmt. Claim ¶¶ 41–45, Horgan Stmt. Claim ¶¶ 27–31 (RICO violations) *with* JSC Am. Compl. ¶¶ 85–93, Horgan Compl. ¶¶ 72–79 (same). Since the transactions asserted herein are identical to those asserted and finally resolved in the NYSE arbitration, res judicata bars the JSC and Horgan plaintiffs from now litigating those claims which they could have and should have raised in the NYSE arbitration against defendants Gebbia and Cunningham. Thus, the JSC and Horgan plaintiffs' Section 10(b) and Rule 10b–5, Section 20(a), common law fraud, conversion, conspiracy, and RICO claims asserted against defendants Gebbia and Cunningham are barred by the doctrine of res judicata.

■ Similarly, all claims asserted herein by the JSC and Horgan plaintiffs against defendants Mannion, Curd, Jr. and SSC must be also be dismissed under the doctrine of res judicata. As shareholders and/or officers and directors of JJSG, Gebbia, Cunningham, Mannion, and Curd, Jr. are in privity with JJSG.[14] *See Siegel,* 842 F.Supp. at 1542 (parent corporation and officer of parent "clearly in privity" with subsidiary corporation against whom plaintiff asserted same claims at arbitration and lost); *see also Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 278 (S.D.N.Y.1988) (officers of corporation in privity with corporation where plaintiff asserted same claim at arbitration and lost); *Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1122 (S.D.N.Y.1986), *aff'd* 822 F.2d 14 (2d Cir.1987) ("corporations and their officers and directors are in privity for purposes of res judicata") (quotation omitted); *In re Shea's Will,* 309 N.Y. 605, 617, 132 N.E.2d 864 (1956) (corporation is in privity with its owners); *North Fork Housing Guild, Inc. v. Mackay,* 97 A.D.2d 433, 467 N.Y.S.2d 402, 403–04 (2d Dep't 1983) (president and shareholder in privity with corporation). Likewise, as the wholly-owned subsidiary of JJSG, SSC is also in privity with its parent JJSG. *See Teltronics Services, Inc. v. Hessen,* 762 F.2d 185, 191–92 (2d Cir.1985); *Siegel,* 842 F.Supp. at 1542. Therefore, since the JSC and Horgan plaintiffs' asserted Section 10(b), Rule 10b–5, common law fraud and conspiracy claims against JJSG in the NYSE arbitration, which claims were finally adjudicated against these plaintiffs in the NYSE Arbitration Award and subsequently confirmed by the New York State Supreme Court, *see supra* at 248–249, and because the

---

**13.** The claims asserted by D. Flanagan and Mando against defendants Gebbia and Cunningham were arbitrated pursuant to NYSE rules governing disputes among members. *See* JSC Stmt. Claim, ¶ 10. The claims asserted by JSC and the debenture purchasers against JJSG were arbitrated pursuant to the terms of the Contingent Note and Debentures (requiring that disputes be resolved by NYSE arbitration.). *See id.*

**14.** Furthermore, at the time of the JSC Transaction, Gebbia, Cunningham and SSC were members of the NYSE. *See* Affidavit of Lawrence S. Bader filed November 14, 1995 ("Bader Aff.") Exh. C ¶ 10. By virtue of this membership, all three defendants were subject to arbitration upon demand by any non-member for "[a]ny dispute, claim or controversy ... arising in connection with the business of such member." *See* Defs.' Supp. Not. Mot. Exh. I (N.Y.SE, Inc. Arbitration Rules of Board of Directors ¶ 2600(a)). Thus, the JSC and Horgan plaintiffs clearly could have raised all claims asserted herein against these parties at the NYSE arbitration.

JSC and Horgan plaintiffs could have and should have raised their conversion and Section 20(a) claims in that prior proceeding,[15] the doctrine of res judicata bars all claims asserted herein against defendants Mannion, Curd, Jr. and SSC by virtue of their privity with JJSG. *See Bd. of Managers*, 234 A.D.2d at 250, 651 N.Y.S.2d 326; *Israel*, 1 N.Y.2d at 118, 151 N.Y.S.2d 1, 134 N.E.2d 97.

*The Doctrine of Collateral Estoppel*

 Similar to res judicata, the doctrine of collateral estoppel may bar a party from relitigating "in a subsequent proceeding an issue clearly raised in a prior proceeding and decided against that party." *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir.1996) (internal quotations omitted); *see also Kulak*, 88 F.3d 63, 71 ("[o]nce a matter has been litigated and decided, a party may be foreclosed from litigating the same issue again."). New York has adopted a two-prong test which must be satisfied before a party can invoke collateral estoppel:

> [First,] [t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and second, there must have been a full and fair opportunity to contest the decision now said to be controlling.

*Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); *see also Johnson*, 101 F.3d at 794; *Kulak*, 88 F.3d at 71–72; *Norris v. Grosvenor Marketing Limited*, 803 F.2d 1281 (2d Cir.1986). Like res judicata, collateral estoppel can be applied to a confirmed arbitration award entered as a final judgment. *See e.g. Commonwealth Ins. Co. v. Thomas A. Greene & Co., Inc.*, 709 F.Supp. 86, 88 (S.D.N.Y.1989); *Grafstrom*, 1986 WL 13806 at *1–2; *Ufheil Construction Co.*, 478 F.Supp. at 768; *American Insurance Co. v. Messinger*, 43 N.Y.2d 184, 189–90, 401 N.Y.S.2d 36, 371 N.E.2d 798 (1977); *Corto*, 546 N.Y.S.2d at 857.

 Unlike res judicata, a party invoking collateral estoppel need not be a party

to the prior proceeding or in any other respect privy thereto. Therefore, The Jesup Group, UPAC, and the Jesup Group Defendants can assert the preclusive force of the NYSE Arbitration Award and its subsequent confirmation in the New York State Supreme Court to collaterally estop the JSC and Horgan plaintiffs from pursuing their RICO, Section 20(a) and conspiracy claims asserted herein against them, even though they were neither a party nor in privity with any party to that proceeding.

In the NYSE arbitration, JJSG was found liable only upon the contract claims asserted with respect to the debentures and secured notes, *see* Defs.' Supp. Not. Mot. Exh. E (NYSE Arbitration Decision, dated September 16, 1994), although, as noted above, issues of JJSG, Gebbia and Cunningham's "bad acts" regarding the JSC Transaction, identical to those alleged herein, were "clearly raised." Nevertheless the JSC and Horgan plaintiffs' claims alleging violations of Section 10(b) and Rule 10b–5, RICO, common law fraud and conspiracy in connection with the JSC Transaction were decided against them. *See* Defs.' Supp. Not. Mot. Exh. F (NYSE Arbitration Decision dated January 12, 1994) (RICO claims asserted by JSC and Horgan plaintiffs and improper distribution of assets claim asserted by JSC plaintiffs dismissed); Exh. E (NYSE Arbitration Decision dated September 16, 1994) (Section 10(b), Rule 10b–5, common law fraud and conspiracy claims denied). Since these issues are identical to the transactions and issues asserted here against The Jesup Group, UPAC and the Jesup Group Defendants, the present actions are clearly precluded. *See Schwartz*, 24 N.Y.2d at 71, 298 N.Y.S.2d 955, 246 N.E.2d 725.

 This is especially true since the NYSE arbitrators did not render their unanimous decision until after they had conducted seventy-one half-day sessions of testimony, received extensive briefing and heard argument by the parties. Moreover, the JSC and Horgan plaintiffs received "a full and fair

---

**15.** This is especially true since the JSC and Horgan plaintiffs each attached a copy of the complaint filed in their respective actions to their statements of claim submitted to the NYSE and incorporated sections of the complaint therein. *See* JSC Stmt. Claim Exh. A; Horg. Stmt. Claim Exh. A.

opportunity to contest" the NYSE Arbitration Decision in the New York State Supreme Court, which subsequently confirmed the NYSE Arbitration Award. *See Johnson v. Watkins,* 101 F.3d 792, 795 (2d Cir.1996). Therefore, under New York law, the JSC and Horgan plaintiffs are collaterally estopped from asserting herein [16] their RICO, Section 20(a) and conspiracy claims against The Jesup Group, UPAC and the Jesup Group Defendants.[17]

■ Finally, plaintiffs' claims asserting a conspiracy to violate Section 10(b) and Rule 10b–5 must be dismissed in light of the Second Circuit's recent decision in *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin,* 135 F.3d 837, 1998 WL 49315 (2d Cir.1998) (U.S. Supreme Court's decision in *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), precludes private civil suit for conspiracy under Section 10(b) and Rule 10b–5).

■ The only remaining claim to be decided is a state law looting claim. Because all federal claims have been dismissed and no diversity exists, the court declines to exercise jurisdiction over these claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Therefore, the remaining state law claim in the *JSC* and *Horgan* actions is dismissed.

## CONCLUSION

For the reasons set forth above, the Securities Group Defendants, The Jesup Group, UPAC and the Jesup Group Defendants' motions for summary judgment in the *JSC* and *Horgan* actions are granted and the remaining state law claims are dismissed. A Pre-Trial Conference shall be held on May 8, 1998 at 2:00 p.m. to discuss the status of the *Beatus* action.

It is **SO ORDERED.**

## APPENDIX A

I. CLAIMS ASSERTED AT THE NYSE ARBITRATION

 \*—Claim decided in NYSE Arbitration Award dated Sept. 16, 1994

 \*\*—Claim decided in NYSE Arbitration Decision dated Jan. 12, 1994

A. By the JSC Plaintiffs

| Claim No. | By | Against | Theory | Finding |
|---|---|---|---|---|
| 1 | JSC | JJSG | Contract (Note) | Liable* |
| 2 | Aircast, Flanagan Trust, D. Flanagan, J. Flanagan & Mando | JJSG | Contract (Debentures) | Liable* |
| 3 | JSC, Mando & D. Flanagan | Gebbia & Cunningham | Section 10(b), Rule 10b–5, Common Law Fraud & Conspiracy | Claim Denied* |

**16.** Similarly, the JSC and Horgan plaintiffs would be collaterally estopped from bringing the claims asserted herein against defendants Mannion, Curd, Jr. and SSC.

**17.** Furthermore, plaintiffs have alleged no acts that could make The Jesup Group, UPAC and/or the Jesup Group Defendants liable without the necessary involvement of JJSG, Cunningham and/or Gebbia for conspiring to violate RICO, Section 10(b), Rule 10b–5 and to commit common law fraud. Indeed, the allegations of the complaints refute any suggestion that these defendants' conduct encompassed more than a conspiracy with JJSG. *See* JSC Am. Compl. ¶ 74 (The "Jesup Group, UPAC and Jesup Group Defendants entered into a conspiracy with [JJSG], Gebbia and Curd, Jr. . . . [and SSC] joined such conspiracy."), Horgan Compl. ¶ 61 (same); JSC Am. Compl. ¶ 82 ("As controlling persons of [JJSG], Gebbia, Cunningham, Curd, Jr., Jesup Group, UPAC and Curd, Sr. . . ."), Horgan Compl. ¶ 70 (same). Therefore, because the JSC and Horgan plaintiffs have alleged no acts which could otherwise establish a conspiracy not involving JJSG, Gebbia and Cunningham with respect to the non-contract claims asserted in the NYSE arbitration, the Court concludes that no rational fact finder could find that a conspiracy to commit the aforementioned acts could have existed without the participation of JJSG, Gebbia and/or Cunningham. Therefore, the JSC and Horgan plaintiffs' conspiracy claims must be dismissed.

| Claim No. | By | Against | Theory | Finding |
|---|---|---|---|---|
| | JSC, Aircast, Flanagan Trust, D. Flanagan, J. Flanagan & Mando | JJSG | Section 10b, Rule 10b–5 Common Law Fraud & Conspiracy | Claim Denied* |
| 4 | JSC, D. Flanagan & Mando | Gebbia & Cunningham | Improper Distribution of JJSG's assets for personal use | Claim Dismissed** |
| 5 | JSC, Mando & D. Flanagan | Gebbia & Cunningham | RICO | Claim Dismissed** |
| | JSC, Aircast, Flanagan ust, D. Flanagan, J. Flanagan & Mando | JJSG | RICO | Claim Dismissed** |
| 6 | JSC, Aircast, Flanagan Trust, D. Flanagan, J. Flanagan & Mando | JJSG | Enjoin Payment To CNB | Claim Denied* |

**B. By the Horgan Plaintiffs**

| Claim No. | By | Against | Theory | Finding |
|---|---|---|---|---|
| 1 | All Plaintiffs | JJSG | Contract (Debentures) | Liable* |
| 2 | All Plaintiffs | JJSG | Section 10(b), Rule 10b–5, Common Law Fraud & Conspiracy | Claim Denied* |
| 3 | All Plaintiffs | JJSG | RICO | Claim Dismissed** |
| 4 | All Plaintiffs | JJSG | Enjoin Payment to CNB | Claim Denied* |

II. CLAIMS ASSERTED IN FEDERAL ACTIONS

A. The JSC Action

| Count No. | By | Against | Theory |
|---|---|---|---|
| 1 | All Plaintiffs | Mannion & Curd, Jr. | Section 10(b) & Rule 10b–5 |
| | Aircast, Flanagan Trust & J. Flanagan | Gebbia & Cunningham | Section 10(b) & Rule 10b–5 |
| 2 | All Plaintiffs | Mannion & Curd, Jr. | Common Law Fraud |
| | Aircast, Flanagan Trust & J. Flanagan | Gebbia & Cunningham | Common Law Fraud |
| 3 | All Plaintiffs | Kaplan | Aiding & Abetting violations of Section 10(b), Rule 10b–5 & Fraud |
| 4 | Aircast, Flanagan Trust & J. Flanagan | Gebbia & Cunningham | Conversion/Fraud on Creditors |
| | All Plaintiffs | Curd, Jr. | Conversion/Fraud on Creditors |
| 5 | All Plaintiffs | CNB | Aiding & Abetting violations of Section 10(b), Rule 10b–5 & Fraud |

| | | | |
|---|---|---|---|
| 6 | All Plaintiffs | The Jesup Group, UPAC, SSC & The Jesup Group Defendants | Conspiracy to violate Section 10(b), Rule 10b–5 & to commit Fraud |
| 7 | All Plaintiffs | The Jesup Group, UPAC, Curd, Sr. & Curd, Jr. | Section 20(a) |
| | Aircast, Flanagan Trust & J. Flanagan | Gebbia & Cunningham | Section 20(a) |
| 8 | All Plaintiffs | The Jesup Group, The Jesup Group Defendants, UPAC, Mann-ion, Curd, Jr. & CNB | RICO |

B. <u>The Horgan Action</u>

| <u>Count No.</u> | By | Against | Theory |
|---|---|---|---|
| 1 | All Plaintiffs | Gebbia, Cunningham, Mannion & Curd, Jr. | Section 10(b) & Rule 10b–5 |
| 2 | All Plaintiffs | Gebbia, Cunningham, Mannion & Curd, Jr. | Common Law Fraud |
| 3 | All Plaintiffs | Kaplan | Aiding & Abetting violations of Section 10(b), Rule 10b–5 & Fraud |
| 4 | All Plaintiffs | Gebbia, Cunningham & Curd, Jr. | Conversion/Fraud on Creditors |
| 5 | All Plaintiffs | The Jesup Group Defendants, The Jesup Group, UPAC & SSC | Conspiracy to violate Section 10(b), Rule 10b–5 & to commit Fraud |
| 6 | All Plaintiffs | Gebbia, Cunningham, The Jesup Group, Curd, Sr. & Curd, Jr. | Section 20(a) |
| 7 | All Plaintiffs | The Jesup Group Defendants, The Jesup Group, Gebbia, Cunningham, Mannion & Curd, Jr. | RICO |