**Robert D. PHILLIPS, individually and on behalf of other shareholders of Computer Depot, Inc., similarly situated, Plaintiff,**

v.

**KIDDER, PEABODY & CO., Defendant.**

**No. 87 Civ. 4936 (SWK).**

United States District Court, S.D. New York.

July 24, 1990.

See also 686 F.Supp. 413.

Schoengold and Sporn, P.C. by Samuel P. Sporn, New York City, for plaintiff.

Howard, Darby and Levin by C. William Phillips, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This purported class action arises out of the issuance of stock and the subsequent Chapter 11 bankruptcy petition by Computer Depot, Inc. ("CDI"). Robert D. Phillips, the named plaintiff, claims that the activities of defendant Kidder, Peabody & Co. ("Kidder") and a defendant class of underwriters for CDI stock, relating to the initial offering and subsequent sales of that stock, violated sections 11 and 12 of the Securities Act of 1933, section 10(b) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b–5. Phillips further alleges common law fraud by Kidder and the defendant class in connection with the issuance and sale of CDI stock. Jurisdiction is founded on 28 U.S.C.

§ 1331, 15 U.S.C. § 77v, 15 U.S.C. § 78aa and principles of pendent jurisdiction. This case is now before the Court on Kidder's motion for dismissal pursuant to Fed.R. Civ.P. 12(c) or in the alternative, Fed.R. Civ.P. 56. Kidder claims that Phillips' suit is barred by res judicata, and that his Complaint, as to the common law fraud and Rule 10b–5 counts, is insufficiently specific to meet the pleading requirements of Fed. R.Civ.P. 9(b).

## BACKGROUND

CDI is a now-defunct corporation which operated a chain of retail personal computer outlets. In 1984 CDI made a public offering of stock, for which defendant acted as underwriter. Plaintiff claims that the registration statement and prospectus prepared in connection with the 1984 stock offering contained material misrepresentations of fact as to the retail market in personal computers. Plaintiff alleges that the prospectus painted an overly optimistic picture of CDI's future, when in fact defendant knew or should have known of a "softening in the personal computer market" at the time the prospectus was prepared. Complaint ¶¶ 17, 18, 27. Plaintiff alleges that he purchased CDI stock in reliance on the prospectus, and suffered remediable injury when CDI went bankrupt as the result of the undisclosed "softening" of the personal computer market. Complaint ¶¶ 40, 41.

On June 20, 1986, another CDI shareholder, Ronald Kassover, filed a purported class action suit ("the Kassover litigation") in the United States District Court for the District of Minnesota against Kidder, the defendant here, CDI, its corporate officers, and Dain Bosworth, Inc. The theories of recovery against all defendants in the Kassover litigation were similar to those asserted against Kidder by plaintiff here. Kassover alleged violations of sections 11 and 12(2) of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l(2)) by all defendants. Kassover further alleged violation of section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and common law fraud by CDI and the corporate officer defendants. *Kassover v. Computer Depot,* *Inc.,* 691 F.Supp. 1205, 1209 (D.Minn.1987), *aff'd,* 902 F.2d 1571 (8th Cir.1990).

Phillips learned of the pendency of the Kassover litigation when he received information concerning CDI's chapter 11 reorganization plan. He then contacted Kassover, and subsequently retained Samuel Sporn, Esq. ("Sporn"), also then serving as counsel in the Kassover litigation. C. William Phillips affidavit, exhibit B, at 2. Phillips then sought to intervene as a plaintiff in the Kassover litigation pursuant to Fed. R.Civ.P. 24(b). At approximately the same time, Kidder moved for summary judgment on the allegations made against it by Kassover. Kassover moved for an order permitting Phillips' intervention in that action and continuing all pending motions for 45 days.

Chief Judge Alsop of the Minnesota District Court denied Kassover's motion for Phillips' intervention and a 45–day continuance as a "transparent attempt" to prevent the imminent success of Kidder's summary judgment motion, and to "shore up a crumbling lawsuit." *Kassover, supra,* 691 F.Supp. at 1210. Kidder's motion for summary judgment was granted on statute of limitations grounds. Under section 13 of the Securities Act of 1933, no suit may be maintained if the plaintiff had or through reasonable diligence should have had notice of the alleged fraud more than one year prior to instituting the lawsuit. The Minnesota court noted that ordinarily, reasonable diligence is a matter for jury determination. The court found, however, that as a matter of law Kassover had, or through reasonable diligence could have had, knowledge of the "softening" of the retail personal computer market more than one year prior to the institution of that lawsuit. *Id.* at 1211. The court found that CDI was under no duty to disclose the possibility of a bankruptcy resulting from its planned expansion because that potential outcome was overly speculative. Kidder's failure to include warnings to that effect in its prospectus and registration statement therefore did not give rise to an action under the Securities Act of 1933. *Id.* at 1212. Because the court found that Kassover had constructive notice of the

"softening" in the retail computer market at least as early as June, 1985, he was barred by the statute of limitations from bringing a claim under the Securities Act of 1933 arising from misrepresentations to that effect. Since Kassover had no action under the Securities Act of 1933, the Minnesota court found that he was no longer an appropriate class representative with respect to his claims under the Securities Act of 1933. Thus, the court declined to certify the plaintiff class with respect to the claims against Kidder. *Id.*

Kassover appealed Judge Alsop's April 27, 1987 order to the Eighth Circuit. During the pendency of that appeal, the instant litigation was instituted by Phillips against Kidder. Judge Edelstein denied Kidder's motion for transfer to the District of Minnesota, and for an undertaking pursuant to section 11(a) of the Securities Act of 1933. After the Eighth Circuit affirmed the April 27, 1987 order, Kassover moved for dismissal without prejudice of his claims against CDI and its directors.[1]

On April 3, 1990, Chief Judge Alsop ordered dismissal of Kassover's claims against Kidder with prejudice, and dismissal of his claims against the other defendants in that action without prejudice.

Defendant now moves for dismissal of this action, arguing that the order of dismissal with prejudice as to Kidder entered in the Kassover litigation should operate as a bar to the instant litigation. In the alternative, defendant argues that plaintiff has failed to plead fraud with the particularity required by Fed.R.Civ.P. 9(b).

### DISCUSSION

1. Claim Preclusion

■ Claim preclusion bars subsequent litigation on a cause of action where a valid and final judgment as to that cause of action has been rendered in prior litigation between the same parties or their privies. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210

(1979); *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 726–27 (2d Cir.1981). Where the elements of claim preclusion are established, subsequent litigation on any theory of recovery or defense arising from the cause of action which was the subject of the prior action is barred, whether or not it was actually litigated in that action. *Tucker, supra*, 646 F.2d at 721; *Index Fund, Inc. v. Hagopian*, 677 F.Supp. 710, 715 (S.D.N.Y.1987). The doctrine of claim preclusion conserves judicial resources and protects defendants from burdensome and vexatious litigation. *Montana, supra*, 440 U.S. at 153, 99 S.Ct. at 973.

■ In general, there must be both an identity of parties and an identity of claims between the prior and subsequent litigation before the operation of claim preclusion is triggered. *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977) (citations omitted). However, the first element, "identity of parties," is construed somewhat less than literally. Several Circuits have followed the lead of the Fifth Circuit in recognizing a doctrine of "virtual representation." Under this principle, if the interests of a nonparty are virtually represented in litigation, the nonparty may be precluded from subsequent litigation. *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.) (citing *Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 618, 46 S.Ct. 420, 70 L.Ed. 757 (1926) (other citations omitted)), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4457 (1981 & Supp.1990). The Due Process clause limits this doctrine, permitting a judgment to bind a non-party only if his relationship to a party is "sufficiently close." *Southwestern Airlines Co. v. Texas Int'l. Airlines*, 546 F.2d 84, 95 (5th Cir.1977) (quoting Vestal, *Preclusion/Res Judicata Variables: Parties*, 50 Iowa L.Rev. 27 (1964)).

---

**1.** Prior to the order of dismissal in the Kassover litigation, Charles Zimmerman, Sporn's local counsel in Minnesota, contacted Chief Judge Alsop on Phillips' behalf, urging that judgment

for Kidder be entered without prejudice to avoid any possible effect on the instant litigation. Howard Affidavit, Exhibit D. Chief Judge Alsop denied Zimmerman's request.

The Second Circuit approaches the adequate representation problem through the concept of privity. Traditionally, claim preclusion has barred subsequent litigation on a cause of action both by parties and their privies. However, in this context, the Second Circuit has rejected the argument that literal privity is required in order to obtain preclusive effect. *Alpert's Newspaper Delivery v. New York Times*, 876 F.2d 266, 270 (2d Cir.1989); *Amalgamated Sugar v. NL Industries*, 825 F.2d 634, 640 (2d Cir.), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987) (citation omitted). Rather, privity is to be interpreted more flexibly than at common law. *Alpert's Newspaper, supra*, 876 F.2d at 270.

■ There is no bright line rule for determining when parties are in privity. Rather, privity is a legal determination for the trial court as to whether the relationship between the parties is sufficiently close to support preclusion. *Amalgamated Sugar, supra*, 825 F.2d at 640–41 (quoting *Southwestern Airlines*, 546 F.2d at 84, 95, and n. 38). In general, if the interests of a non-party are represented by a party to the litigation who is "vested with the authority of representation," the non-party may be bound by the judgment. *Alpert's Newspaper, supra*, 876 F.2d at 270 (citing *Expert Electric*, 554 F.2d at 1233).[2] For example, in *Expert Electric*,[3] plaintiffs, electrical contracting firms, were precluded from subsequent litigation where they had been represented in prior litigation on the same cause of action by the trade organization of which they were members. *Expert Electric, supra*, 554 F.2d at 1233–34. The *Amalgamated Sugar* case held that nonparty shareholders of a corporation were precluded from subsequent litigation where judgment was entered after vigorous litiga-

tion on the same cause of action by the corporation itself. *Amalgamated Sugar, supra*, 825 F.2d at 640. In *Alpert's Newspaper*, the Court found that the involvement of a trade association of newspaper deliverers in a prior litigation barred member deliverers from relitigating the issues determined there. *Alpert's Newspaper, supra*, 876 F.2d at 270.

■ The Court finds that there is insufficient evidence in the record to warrant a finding that Phillips' interests were adequately represented by Kassover, or that Kassover was vested with the authority to represent him. The doctrine of virtual representation is to be kept within "strict confines." *Pollard, supra*, 578 F.2d at 1008; *Benson & Ford, supra*, 833 F.2d at 1175. This case does not fall within its purview.

First, the evidence in the record indicates that plaintiff in the Kassover litigation did not and could not actually represent Phillips' interests. Kassover alleged wrongdoing only in association with the initial offering of CDI stock. Plaintiff here makes claims concerning both the initial offering of CDI stock and his subsequent purchases of stock in the aftermarket. Moreover, the Minnesota court found that Kassover, as a matter of law, knew or should have known about the alleged misrepresentations more than one year prior to the institution of that litigation, and that his claims under sections 11 and 12(2) of the Securities Act of 1933 were thus time barred.[4] *Kassover, supra*, 691 F.Supp. at 1212. Because Kassover's claims against Kidder in the prior litigation were time barred, the Minnesota court concluded that Kassover was an inadequate class representative and declined to certify a plaintiff class with respect to those claims. This Court therefore concludes that the dissimilarity of interests between Kassover and Phillips precludes a finding that Phillips' interests were ade-

---

**2.** Other circuits use the phrase "express or implied duties" of representation to communicate a similar concept. *See, e.g., Klugh v. United States*, 818 F.2d 294, 300 (4th Cir.1987); *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir.1978).

**3.** Although the *Expert Electric* case concerned the preclusive effect of a state court judgment,

federal preclusion law was applied there. *Grossman v. Axelrod*, 466 F.Supp. 770, 775 n. 3 (S.D.N.Y.1979). The applicability of federal preclusion law here is not in dispute.

**4.** The question of whether or not plaintiff here is similarly barred is not now before the Court.

quately represented in the Kassover litigation.

Second, there is insufficient evidence to support a finding that Kassover was "vested with the authority of representation." Defendant attempts to adduce certain similar features of the litigations as evidence of vested authority. Plaintiffs Kassover and Phillips share a common attorney, Samuel Sporn. Also, the complaints in the two actions bear a striking resemblance to each other, both naming Kidder as a defendant and asserting similar legal theories arising from the same sequence of events. Finally, Sporn's local counsel, Charles Zimmerman, wrote a letter on Phillips' behalf to the Minnesota court urging it not to dismiss Kassover's claims against Kidder with prejudice. That letter expressed the fear that such a dismissal would influence the instant action.

These three facts are insufficient to support a finding that Phillips authorized Kassover to represent his interests. As to the first and second points, other federal courts have held that a commonality of attorneys and pleadings alone does not allow a prior judgment to have preclusive effect on nonparties, where the party and nonparty did not bear the requisite legal relationship. *See, e.g., Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 864–65 (5th Cir.1985) (citations omitted).[5] In *Freeman,* plaintiff family members were involved in an accident with a truck operated by defendant. The Fifth Circuit held that a finding of no negligence in the prior personal injury claim prosecuted by the father against the defendant had no preclusive effect on the subsequent wrongful death suits by the mother and children on behalf of the deceased sibling. This finding was despite the identity of attorneys and similar allegations of negligence.

The facts of the present case are similar. There is no evidence of a legal relationship between Kassover and Phillips, or of any duty of representation flowing from one to the other. This point was underscored by the Minnesota court's refusal to certify a plaintiff class.

As to defendant's third point, while Zimmerman's letter to Judge Alsop indicates that there was some representation of Phillips' interests in the prior litigation, it is not sufficient to trigger a finding of authority to represent. The letter was not written until after the Minnesota court had granted a motion to dismiss Kassover's claims and denied a motion to certify Kassover as a plaintiff class representative. Defendant does not allege that Phillips' interests were represented while the court was considering the merits of Kassover's claim, and by its terms the Minnesota court's dismissal of Kassover's claims against Kidder did not contemplate the viability of any other party's claims. Prior Second Circuit cases in which a nonparty has been precluded from subsequent litigation all involve a much closer relationship than can be found here. *Expert Electric, supra,* 554 F.2d at 1233–34; *Amalgamated Sugar, supra,* 825 F.2d at 640; *Alpert's Newspaper, supra,* 876 F.2d at 270. The sort of representation found in the instant case does not suffice to support claim preclusion.

Since Kassover's interests, as they concerned the claims at issue in the instant litigation, were demonstrably different from those of plaintiff, and since Kassover had no duty or authority to represent the interests of plaintiff in the prior litigation, Kassover did not adequately represent plaintiff and the judgment entered in the Kassover litigation cannot function as a bar to litigation by plaintiff here. Because the Court finds that there is insufficient evidence to establish the first element, identity of parties, the Court need not address the second element, identity of claims between the two litigations. Defendant's motion to dismiss under Fed.R.Civ.P. 12(c), or in the alternative under Fed.R.Civ.P. 56

---

**5.** Defendant cites *Ruiz v. Commissioner of Department of Transportation of the City of New York,* 858 F.2d 898 (2d Cir.1988) to the contrary. *Id.,* 858 F.2d at 903 (citing *Watts v. Swiss Bank Corp.,* 27 N.Y.2d 270, 278, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970)). That case, however, is inapposite, as it applied the preclusion law of New York State. *Id.* By contrast, this case calls for application of federal preclusion law. *See Angel v. Bullington,* 330 U.S. 183, 192, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947).

on grounds of claim preclusion is therefore denied.

## 2. Pleading Fraud with Particularity

Fraud claims must be pleaded with particularity as required by the Federal Rules of Civil Procedure 9(b). *See, Zucker v. Katz*, 708 F.Supp. 525, 531 (S.D.N.Y.1989) (Kram, J.); *Construction Technology v. Lockformer Co., Inc.*, 704 F.Supp. 1212, 1230–31 (S.D.N.Y.1989); *Anitora Travel, Inc. v. Lapian*, 677 F.Supp. 209, 214 (S.D. N.Y.1988).

■ Allegations · based on information and belief which fail to specify the time, place, speaker and content of the alleged misrepresentations lack the "particulars" required by Rule 9(b). *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986); *see Denny v. Barber*, 576 F.2d 465, 469 (2d Cir.1978); *Zerman v. Ball*, 735 F.2d 15, 22 (2d Cir. 1984); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). Failure to connect allegations of fraudulent representation to particular defendants and to allege specific facts to support the claims of fraud is sufficient grounds for dismissal. *Luce, supra*, 802 F.2d at 54.

To satisfy the Rule 9(b) requirements in the Second Circuit, plaintiffs must specify: 1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the context of such statements and the manner in which they misled the plaintiffs, and 4) what defendants obtained as a consequence of the fraud. *Beres v. Thomson McKinnon*, No. 85–6674 (S.D.N.Y. September 1, 1989) (Kram, J.), slip op. at 18 (WESTLAW, Allfeds library, Dist. file, 1989 WL 105967) (citing *Barr v. McGraw-Hill, Inc.*, [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶¶ 94,382 at 92,498, 710 F.Supp. 95 (S.D.N.Y.1989); and quoting *Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978)).

■ Here, Phillips' Complaint satisfies the first of the criteria for Fed.R.Civ.P. 9(b) by identifying four specific allegedly fraudulent statements from the July 12, 1984 Prospectus ("the 1984 Prospectus") concerning CDI's future growth:

> [t]he Company plans to open 49 new computer centers during the remainder of calendar 1984 and has entered into letters of intent or made similar arrangements with host department stores for 41 of these centers. The letters of intent are not binding on the Company or the stores and the Company may determine not to proceed with certain of the proposed stores or may substitute other stores or chains.

> \*　　\*　　\*　　\*　　\*　　\*

> Subject to obtaining financing and to the other conditions relating to opening new stores, the Company presently plans to open approximately 90 new computer centers in calendar 1985.

> \*　　\*　　\*　　\*　　\*　　\*

> Principally because of strong product demand and high department store traffic flows, the Company's experience to date indicates that a new computer center generally will begin to generate sales as soon as it opens.

> \*　　\*　　\*　　\*　　\*　　\*

> Based on all of the above factors, the Company believes that a new computer center generally can achieve profitability, after allocation of general and administrative expenses, within a relatively short period after it opens.

Complaint ¶¶ 17, 27. Plaintiff further alleges a false statement that "the Company believes that it is able to remain price competitive due to its large volume of purchases which permits it to take advantage of high levels of price discounts." Complaint ¶ 27(ii). Plaintiff claims that, due to "softening" in the personal computer market and the cutting of prices, the Company had constructive notice that its plans for growth and projected profitability, as expressed in the Prospectus, were false. Complaint ¶ 27. Plaintiff also alleges that CDI failed to meet any of its purported goals for expansion. Complaint ¶ 20.

As to misleading omissions, plaintiff alleges that the 1984 Prospectus failed to disclose information regarding price pressure and market shakeout in the retail computer market which made representations as to future growth misleading, and that information as to losses suffered in the weeks before the effective date of the Prospectus was similarly omitted. Complaint ¶¶ 18, 19, 28. Plaintiff also charges that the Prospectus neglected to disclose material information as to the effects of the softening in the personal computer market on future profits and business operations. Complaint ¶ 28.

Clearly, these pleadings identify specific allegedly misleading statements and omissions, as well as their sources, thereby fulfilling the first element of Rule 9(b).

Likewise, plaintiff has met the second criterion. The Complaint identifies all of the alleged fraudulent statements and omissions as being part of the 1984 Prospectus. Accordingly, the Court finds that Phillips sufficiently pleaded the time and place of each alleged fraudulent statement and omission. The Complaint further identifies defendant as the underwriter for the stock, and hence as a party responsible for the content of the Prospectus. Complaint ¶¶ 29, 33. Thus, plaintiff has identified defendant as responsible for each fraudulent statement, and satisfied the second element of Rule 9(b).

In connection with the second criterion for Rule 9(b), defendant contends that its participation in the fraud was inadequately pleaded in the Complaint. Defendant Memorandum, at 14. However, this is simply not the case. The Complaint clearly alleges that defendant, in its role as a lead underwriter, recklessly or intentionally certified the truth of the allegedly fraudulent statements contained in the Prospectus. Complaint ¶¶ 29, 44. The Complaint also claims that defendant followed this course of action to promote sales of CDI stock. Complaint ¶ 37. Thus, the Complaint amply pleads the "why, when, and how" of the role defendant played in the alleged fraud.

The Complaint also identifies the context of the fraudulent statements and the manner in which they misled the plaintiff, in fulfillment of the third criterion for specificity in pleading. The Complaint alleges that the false statements in the prospectus were made in the course of promoting sales in the initial offering of CDI's stock, and in the course of subsequent sales of CDI stock. Complaint ¶¶ 33, 37. Plaintiff then alleges that the misrepresentations of defendant caused an artificial inflation of the price of the stock. Complaint ¶¶ 33, 43. Plaintiff claims to have purchased CDI stock in reliance on this artificially inflated price. Complaint ¶¶ 40, 45. The third part of the Rule 9(b) test is thus satisfied.

Finally, the Complaint adequately identifies the value received as a consequence of the fraud. Plaintiff alleges that defendant benefited by the sale of stock which occurred as a result of the alleged fraud. Complaint ¶¶ 32, 33, 45. Thus, the Court finds that the Complaint satisfies the fourth part of the 9(b) test.

The Court finds that the Complaint is sufficiently specific as regards its allegations of fraud to satisfy the requirements of Fed.R.Civ.P. 9(b). Since the Complaint is facially sufficient to withstand a Rule 9(b) challenge, defendant's motion must be denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss pursuant to Fed.R.Civ.P. 56 or in the alternative, pursuant to Fed.R. Civ.P. 12(c), is DENIED. Discovery shall proceed.

SO ORDERED.