Betty BEATUS, Ida Z. Small, and
Howard Beatus, Plaintiffs,

v.

John J. GEBBIA, Daniel Cunningham,
Robert Mannion, Jesup Josephthal Secu-
rities Group, Inc., the Jesup Group, Inc.,
Howard R. Curd, Sr., Howard F. Curd,
Jr., Keith E. Johnson, Thomas E. Con-
stance, Jonathan R. Furer, Ronald P.E.
Leeds and Robert Weninger, Defen-
dants.

No. 92 CIV. 6503(JES).

United States District Court,
S.D. New York.

July 11, 1998.

Christopher Lovell, P.C., New York City
(Christopher Lovell, of counsel), for Plaintiffs
Betty Beatus, Ida Z. Small, Howard Beatus.

Morvillo, Abramowitz, Grand, Iason & Sil-
berberg, New York City (Lawrence S. Bader,
Jill K. Israeloff, of counsel), for Defendants
John. J. Gebbia, Daniel Cunningham, Robert
Mannion, Securities Settlement Corporation.

Camhy, Karlinsky & Stein, New York City
(Howard R. Curd, Sr., Keith E. Johnson,
Robert Weninger, Ronald D. Lefton, of coun-

sel), for Defendants Uniroyal Plastic Acquisition Corp., The Jesup Group, Inc.

Rogers & Wells, New York City (Thomas E. Constance, Joseph Ferraro, of counsel), for Defendant, Thomas E. Constance.

Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, NJ (Steven Adler, of counsel), for Defendant Jonathan R. Furer.

Brian W. Guillorn, P.C., New York City (Brian Guillorn, of counsel), for Defendant Ronald P.E. Leeds.

Ohrenstein & Brown, New York City (John Paul Fulco, of counsel), for Defendant Howard F. Curd, Jr.

D'Amato & Lynch, New York City (Kevin Windels, of counsel),for Defendant Martin Kaplan.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs Betty Beatus, Ida Z. Small and Howard Beatus (collectively the "Beatus plaintiffs") bring the instant action against Howard R. Curd, Sr. ("Curd, Sr."), Keith E. Johnson ("Johnson"),[1] Thomas E. Constance ("Constance"), Ronald P.E. Leeds ("Leeds"), Jonathan R. Furer ("Furer") and Robert Weninger ("Weninger") (collectively, the "Jesup Group Defendants"), and against The Jesup Group, Inc. ("The Jesup Group") and Howard F. Curd, Jr. ("Curd, Jr.").[2] The Beatus plaintiffs assert, *inter alia*, that Curd, Jr. violated Section 10(b) of the Securities and Exchange Act ("the Exchange Act"), 15 U.S.C. § 78(b), and Rule 10b–5 promulgated thereunder ("Rule 10b–5"), *see* Beatus Amended Complaint dated October 23, 1992 ("Beatus Am. Compl.") ¶¶ 30–50; that The Jesup Group and the Jesup Group Defendants conspired to violate Section 10(b) of the Exchange Act and Rule 10b–5, and to commit common law fraud, *see id.* at ¶¶ 65–72; that The Jesup Group, Curd, Sr. and Curd, Jr.

violated Section 20(a) of the Exchange Act, 15 U.S.C. § 578(e) ("Section 20(a)"), *id.* at ¶¶ 73–76; that Curd, Sr. and Curd, Jr. committed common law fraud and fraudulently converted assets, *id.* at ¶¶ 51–64; and, that The Jesup Group, the Jesup Group Defendants and Curd, Jr. violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(a), (b) and (c), and conspired to violate RICO, 18 U.S.C. § 1962(d). *Id.* at ¶¶ 77–85.

Pursuant to Fed.R.Civ.P. 56, The Jesup Group, the Jesup Group Defendants and Curd, Jr. move for summary judgment on the grounds of collateral estoppel. For the reasons set forth below, defendants' motion for summary judgment is granted.

## BACKGROUND

The reader is referred to this Court's Memorandum Opinion and Order dated March 31, 1998, entered in *JSC Securities, et al. v. Gebbia, et al.*, 1998 WL 152935, 91 Civ. 8647(JES) (S.D.N.Y.1998) (the "*JSC* action"), and *Horgan, et al. v. Gebbia, et al.*, 92 Civ. 7101(JES) (the "*Horgan* action") (collectively with this action, the "related actions") for a detailed description of the underlying facts and events. *See JSC Securities, Inc. v. Gebbia*, 4 F.Supp.2d 243 (S.D.N.Y.1998).

Briefly, the Beatus plaintiffs' claims arise out of a purchase and sale agreement entered into by Josephthal & Co., Jesup Josephthal Securities Group, Inc. ("JJSG"), and Jesup & Lamont, Inc. ("J & L"), a subsidiary of JJSG. Pursuant to this agreement, Josephthal & Co. sold its operating assets to J & L in exchange for $6 million in cash and a $3 million contingent note issued by JJSG (hereinafter the "JSC Transaction"). Upon the closing, Josephthal & Co. changed its name to JSC Securities, Inc. ("JSC"), a plaintiff in the related *JSC* action.

Pursuant to the purchase agreement, the individual plaintiffs in the *JSC* and *Horgan* actions sold and rolled over subordinated de-

---

**1.** By Order dated November 9, 1995 the three related actions were suspensed as to defendant Keith E. Johnson, after he filed a petition for personal bankruptcy. Since then, Johnson's personal bankruptcy has been adjudicated and he has been fully discharged.

**2.** By Stipulation dated September 28, 1994, all claims by the Beatus plaintiffs against defendants John J. Gebbia, Daniel Cunningham, Robert Mannion and Jesup Josephthal Securities Group, Inc. ("JJSG") were dismissed with prejudice.

bentures issued by Josephthal & Co. in order to purchase subordinated debentures from JJSG, while plaintiffs Betty Beatus and Ida Z. Small each exchanged their $200,000 secured demand notes issued by Josephthal & Co. for secured demand notes (the "SDNs") issued by Securities Settlement Corp. ("SSC"), a wholly-owned subsidiary of JJSG that conducted business as a clearing broker. *See* Beatus Am. Compl. ¶ 24. In January 1991, JJSG defaulted on all of its obligations incurred in the JSC Transaction.

### Claims Asserted in the Related Actions

Plaintiffs in the related actions contend that former defendants John J. Gebbia, Daniel Cunningham, Robert Mannion,[3] and current defendant Curd, Jr. (who was an officer and director of JJSG and a shareholder of JJSG's parent company) made material oral and written misrepresentations to plaintiffs in the *JSC* action regarding the operating and financial condition of JJSG and SSC. *Compare* JSC Amended Complaint ("JSC Am. Compl.") ¶¶ 28–29, 42–44 *and* Horgan Complaint ("Horgan Compl.") ¶¶ 24–25, 38–40 *with* Beatus Am. Compl. ¶¶ 26–28, 32–41. The Beatus plaintiffs claim that these statements were then communicated to them by Raymond Mando, a plaintiff in the *JSC* action who is alleged to be the Beatus plaintiffs' agent, and relied upon to their detriment. *See* Beatus Am. Compl. ¶¶ 8, 26–29, 32–33, 39, 44–46, 48–49. Thus, the Beatus plaintiffs essentially contend that because the JSC plaintiffs were defrauded, they too were defrauded, albeit derivatively.[4] *See* Beatus Am. Compl. ¶¶ 48–49.

Similarly, the Beatus plaintiffs assert that certain defendants failed to disclose that JJSG was secretly controlled by, *inter alia,* The Jesup Group, Furer, and the Jesup Group Defendants. *Compare* JSC Am. Compl. ¶¶ 52, 74–79 *and* Horgan Compl. ¶¶ 48, 61–66 *with* Beatus Am. Compl. ¶¶ 29, 67–70.

### The NYSE Arbitration

Like plaintiffs in the *JSC* and *Horgan* actions, the Beatus plaintiffs were bound to arbitrate before the New York Stock Exchange (the "NYSE") all disputes arising from the JSC Transaction by an arbitration clause contained in their SDNs. *See* Defendants' Notice of Motion for Summary Judgment Dismissing Beatus Amended Complaint, dated April 27, 1998 ("Defs.' Not. Mot.") Exh. D (Secured Demand Note Collateral Agreement) ¶ 23. However, this matter was never actually arbitrated. On August 11, 1994, the Beatus plaintiffs entered into a Settlement Agreement with Gebbia, Cunningham, Mannion, SSC and JJC Holding II, Inc. (the successor-in-interest to JJSG and formerly known as Jesup & Lamont Securities Group, Inc.), dismissing with prejudice all claims raised in the *Beatus* action, withdrawing with prejudice all claims asserted at arbitration, and agreeing to be bound by the results of the *JSC* and *Horgan* actions and the NYSE Arbitration conducted by the JSC and Horgan plaintiffs. *See id.* Exh. E (Settlement Agreement dated August 11, 1994) (hereinafter, the "Settlement Agreement") at 1, 4, 8. Neither The Jesup Group, Curd, Jr. nor any of the Jesup Group Defendants were joined as parties in the NYSE Arbitration.

On September 16, 1994, after seventy-one hearing sessions, the NYSE arbitrators issued their unanimous written decision (hereinafter the "NYSE Arbitration Award"), finding that all plaintiffs in the *JSC* and *Horgan* actions, except Daniel Flanagan, were entitled to recover from JJSG the defaulted amounts claimed as interest and principal due on the promissory note and debentures issued by JJSG. *See* NYSE Arbitration Decision dated September 16, 1994 ("NYSE Arbitration Decision"), ¶¶ 1–3. All other remaining[5] claims, including Section 10(b), Rule 10b–5, common fraud and conspiracy claims asserted against JJSG, Gebbia and Cunning-

---

**3.** *See supra,* n. 2.

**4.** In fact, the allegations contained in the Amended Complaint filed in the *JSC* action were incorporated by reference into the Amended Complaint filed herein. *See* Beatus Am. Compl. ¶ 1.

**5.** On January 12, 1994, the NYSE arbitrators granted respondents' motion to dismiss the improper distribution of assets claim asserted by the JSC plaintiffs and RICO claims asserted by the JSC and Horgan plaintiffs. *See* NYSE Arbitration Decision dated January 12, 1994.

ham in connection with the JSC Transaction, were "denied in their entirety." *Id.* ¶ 4. On July 12, 1995, the NYSE Arbitration Award was confirmed in New York State Supreme Court, New York County, over the JSC and Horgan plaintiffs' objections. *See Jesup, Josephthal Sec. Inc., et al. v. JSC Inc., et al.*, Index No. 108219/95 Final Disposition dated July 12, 1995 (hereinafter, the "July 12, 1995 Decision").

All remaining defendants in this action move for summary judgment arguing, *inter alia*, that by virtue of the Settlement Agreement wherein they agreed to be bound by the NYSE Arbitration Award and the outcome of the *JSC* and *Horgan* actions, the Beatus plaintiffs placed themselves in privity with the JSC and Horgan plaintiffs, thereby allowing them to represent the Beatus plaintiffs' interests in both the NYSE Arbitration and in the related actions before this Court. *See* Memorandum of "The Jesup Group Defendants"[6] In Support of Their Motion for Summary Judgment Dismissing the Amended Complaint dated April 27, 1998 ("Defs.' Mem.") at 5. Therefore, defendants contend that all claims asserted herein by the Beatus plaintiffs, as well the essential issues and operative facts underlying those claims, have already been adversely adjudicated against the Beatus plaintiffs because they were adversely adjudicated against their privies, the JSC and Horgan plaintiffs, *see id.* at 5–6, and that therefore, the Beatus plaintiffs are collaterally estopped from relitigating claims finally decided in the confirmed NYSE Arbitration Award. *Id.* at 6.[7]

## DISCUSSION

As in the *JSC* and *Horgan* actions, this Court is obliged to treat the July 12, 1995 Decision of the New York State Supreme Court confirming the NYSE Arbitration Award as would other New York courts. *See JSC Securities*, 4 F.Supp.2d at 250; *see also Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir.1996); *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir.1996); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996); *Hatzlachh Supply, Inc. v. Moishe's Electronics Inc.*, 848 F.Supp. 25, 28 (S.D.N.Y.1994); *Grafstrom v. Bear, Stearns & Co.*, 1986 WL 13806 at *1 (S.D.N.Y.1986); *Adelstein v. Carnival Carting, Inc.*, No. 82 Civ. 3060, slip op. at 2 (S.D.N.Y. March 2, 1983) (giving full faith and credit to arbitration award confirmed in New York state court); *see also* Jack H. Friedenthal, et al., CIVIL PROCEDURE, § 14.15 (2d ed.1993). Therefore, New York law determines what preclusive effect the July 12, 1995 Decision has upon the *Beatus* action. *See Ferris v. Cuevas*, 118 F.3d 122, 125–26 (2d Cir.1997); *see also Johnson*, 101 F.3d at 794; *Grafstrom*, 1986 WL 13806 at *1.

*Collateral Estoppel*

 The doctrine of collateral estoppel "is 'intended to reduce litigation and conserve the resources of the court and litigants and it is based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it.'" *Juan C. v. R.C. Cortines*, 89 N.Y.2d 659, 657 N.Y.S.2d 581, 585, 679 N.E.2d 1061 (1997) (quoting *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63 (1985)).

 Under New York law, collateral estoppel may only be invoked if the following two prong test is satisfied:

'[f]irst, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and

---

**6.** Although defendants define "The Jesup Group Defendants" as including all remaining defendants in the Beatus action, for the sake of clarity and consistency with this Court's Memorandum Opinion and Order dated March 31, 1998, in the related *JSC* and *Horgan* actions, the term the "Jesup Group Defendants" shall hereafter include only defendants Curd, Sr., Johnson, Constance, Leeds and Weninger. *See supra* at 257.

**7.** The Beatus plaintiffs have declined to file a response to defendants' motion for summary judgment.

fair opportunity to contest the prior determination.'

*Juan C.,* 657 N.Y.S.2d at 585, 679 N.E.2d 1061 (quoting *Kaufman,* 492 N.Y.S.2d at 588, 482 N.E.2d 63). Collateral estoppel may be raised to bar a nonparty to a prior action from relitigating issues where there exists "'a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation.'" *Juan C.,* 657 N.Y.S.2d at 585, 679 N.E.2d 1061 (quoting *D'Arata v. New York Cent. Mut. Fire Ins. Co.,* 76 N.Y.2d 659, 563 N.Y.S.2d 24, 26, 564 N.E.2d 634 (1990)); *see also People v. Roselle,* 84 N.Y.2d 350, 618 N.Y.S.2d 753, 643 N.E.2d 72 (1994). The New York Court of Appeals has recognized this form of privity, which "'includes those ... whose interests are represented by a party to the action, and possibly coparties to a prior action.'" *Juan C.,* 657 N.Y.S.2d at 585, 679 N.E.2d 1061 (quoting *Watts v. Swiss Bank Corp.,* 27 N.Y.2d 270, 317 N.Y.S.2d 315, 320, 265 N.E.2d 739 (1970)); *Cf. Algie v. RCA Global Communications, Inc.,* 891 F.Supp. 839, 853–54 (S.D.N.Y.), *aff'd,* 60 F.3d 956 (2d Cir.1995) (privity may be inferred from agreement or relationship that demonstrates that litigant was authorized to represent and was in fact representing legal interest of non-party).

■ Collateral estoppel can be applied to a confirmed arbitration award entered as a final judgment. *See e.g. Commonwealth Ins. Co. v. Thomas A. Greene & Co., Inc.,* 709 F.Supp. 86, 88 (S.D.N.Y.1989); *Grafstrom,* 1986 WL 13806 at *1–2; *Ufheil Construction Co. v. Town of New Windsor,* 478 F.Supp. 766, 768 (S.D.N.Y.1979); *American Insurance Co. v. Messinger,* 43 N.Y.2d 184, 401 N.Y.S.2d 36, 38–39, 371 N.E.2d 798 (1977); *Corto v. Lefrak,* 155 A.D.2d 246, 546 N.Y.S.2d 856, 857 (1st Dep't 1989), *app. denied,* 75 N.Y.2d 707, 554 N.Y.S.2d 476, 553 N.E.2d 1024 (1990). A party invoking collateral estoppel need not be a party to the prior proceeding or in any other respect privy thereto. *Cf. Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 4, 134 N.E.2d 97 (1956).

■ Here, it is clear that the Beatus plaintiffs' rights in this proceeding "are conditioned in one way or another on, or derivative of, the rights of" the JSC and Horgan plaintiffs in both the NYSE Arbitration and in the *JSC* and *Horgan* actions. *See Juan C.,* 657 N.Y.S.2d at 585, 679 N.E.2d 1061. By entering into the Settlement Agreement, the Beatus plaintiffs purposefully aligned their legal interests with those of the JSC and Horgan plaintiffs, in effect choosing the latter to "virtually represent" their interests. *See* Defs.' Not. Mot. Exh E at 1, 4, 8.; *Cf. Chase Manhattan Bank N.A. v. Celotex Corp.,* 56 F.3d 343 (2d Cir.1995); *Phillips v. Kidder, Peabody & Co.,* 750 F.Supp. 603, 606 (S.D.N.Y.1990). Thus, for the purpose of collateral estoppel the Court finds the Beatus plaintiffs to be in privity with the JSC and Horgan plaintiffs.

With respect to identity of issues amongst these parties, it is clear from a comparison of the complaints filed in the related actions that all material events and operative facts underlying the *Beatus* action are identical to those facts and events underlying the *JSC* and *Horgan* actions. *Compare* JSC Am. Compl. ¶¶ 28–29, 42–44, 52, 74–79 *and* Horgan Compl. ¶¶ 24–25, 38–40, 48, 61–66 *with* Beatus Am. Compl. ¶¶ 26–28, 32–41, 67–70. In fact, the Amended Complaint filed in the *Beatus* action incorporates the Amended Complaint filed in the *JSC* action by reference, *see* Beatus Am. Compl. at 1, and the claims asserted in the *JSC* and *Horgan* actions are identical to the claims asserted herein. *Compare* JSC Am. Compl. ¶¶ 31–50 *and* Horgan Compl. ¶¶ 27–46 *with* Beatus Am. Compl. ¶¶ 30–50 (claiming Curd, Jr. and others violated Section 10(b) of the Exchange Act and Rule 10b–5); *compare* JSC Am. Compl. ¶¶ 51–54, 60–63 *and* Horgan Compl. ¶¶ 47–50, 56–59 *with* Beatus Am. Compl. ¶¶ 51–64 (claiming Curd, Jr. and others committed common law fraud and fraudulently converted assets); *compare* JSC Am. Compl. ¶¶ 73–80 *and* Horgan Compl. ¶¶ 60–67 *with* Beatus Am. Compl. ¶¶ 65–72 (claiming that The Jesup Group and the Jesup Group Defendants conspired to violate Section 10(b) of the Exchange Act, Rule 10b–5, and to commit common law fraud,); *compare* JSC Am.

Compl. ¶¶ 81–84 *and* Horgan Compl. ¶¶ 68–71 *with* Beatus Am. Compl. ¶¶ 73–76 (asserting claims against The Jesup Group, Curd, Sr., Curd, Jr. and others for control group liability under Section 20(a) of the Exchange Act); *compare* JSC Am. Compl. ¶¶ 31–50 *and* Horgan Compl. ¶¶ 72–80 *with* Beatus Am. Compl. ¶¶ 77–85 (asserting claims against The Jesup Group, the Jesup Group Defendants, Curd, Jr. and others for violations of RICO). Moreover, the same issues raised herein by the Beatus plaintiffs were raised by the JSC and Horgan plaintiffs in the NYSE Arbitration. *Compare* JSC Plaintiffs' Statement of Claim ("JSC Stmt. Claim") ¶¶ 11, 28–33, 41–45 (asserting Section 10(b) of the Exchange Act and Rule 10b–5, RICO, common law fraud, and conspiracy claims against JJSG) *and* Horgan Plaintiffs' Statement of Claim ("Horg.Stmt.Claim") ¶¶ 12, 22–31 (same) *with* Beatus Plaintiff's Statement of Claim ("Beatus Stmt. Claim") ¶¶ 34–35, 36–39, 40–42 (asserting same claims against JJSG's wholly-owned subsidiary, SSC).

In the NYSE Arbitration, JJSG was found liable only upon the contract claims asserted with respect to the debentures and secured notes, *see* NYSE Arbitration Decision, although issues of JJSG, Gebbia and Cunningham's "bad acts" regarding the JSC Transaction, identical to those alleged herein, were "clearly raised." Nevertheless, the JSC and Horgan plaintiffs' claims alleging violations of Section 10(b) and Rule 10b–5, RICO, common law fraud and conspiracy in connection with the JSC Transaction were decided against them. *See id.* (Section 10(b), Rule 10b–5, common law fraud and conspiracy claims denied); *see also* NYSE Arbitration Decision dated January 12, 1994 (RICO claims asserted by JSC and Horgan plaintiffs and improper distribution of assets claim asserted by JSC plaintiffs dismissed). Since these issues are identical to the transactions and issues asserted herein by the Beatus plaintiffs against The Jesup Group, the Jesup

Group Defendants and Curd, Jr., the present action is clearly precluded by virtue of the Beatus plaintiffs' privity with the JSC and Horgan plaintiffs. *See Schwartz v. County of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 959–60, 246 N.E.2d 725 (1969).

This is especially true since the Beatus plaintiffs intentionally and knowingly relinquished their full and fair opportunity to contest the prior determination by entering into the Settlement Agreement and agreeing to be bound by the outcome of the *JSC* and *Horgan* actions and the NYSE Arbitration. *See* Defs.' Not. Mot. Exh. E at 1, 4, 8. Furthermore, as discussed in detail in this Court's Memorandum Opinion and Order dated March 31, 1998, entered in the *JSC* and *Horgan* actions, the Beatus plaintiff's privies received a full and fair opportunity to contest the NYSE Arbitration Award in the New York State Supreme Court, which subsequently confirmed the award. *See JSC Securities, Inc.*, 4 F.Supp.2d at 252–53; *see also Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir.1996); *In re New York Asbestos Litigation*, 738 F.Supp. 66, 68 (E.D.N.Y.1990), *aff'd sub nom, Kreppein v. Celotex Corp.*, 969 F.2d 1424 (2d Cir.1992). Moreover, the Beatus plaintiffs have failed to carry their burden of proof and to come forward with any evidence or argument that collateral estoppel should not apply because their first opportunity to contest the prior determination was unfair. *See* Friedenthal § 14.14 at 691–692; *see also Hickerson v. City of New York*, 1998 WL 283205, *9 (2d Cir. June 3, 1998) (citing *In re Sokol*, 113 F.3d 303, 306 (2d Cir.1997); *Kaufman*, 492 N.Y.S.2d at 588, 482 N.E.2d 63; *Colon v. Bermudez*, 61 Misc.2d 255, 305 N.Y.S.2d 630, 639 n. 15 (N.Y.Civ.Ct.1969)). Therefore, under New York law, the Beatus plaintiffs are collaterally estopped from litigating herein their Section 10(b), Rule 10b–5, Section 20(a) and RICO claims asserted against The Jesup Group, the Jesup Group Defendants, and Curd, Jr.[8]

---

**8.** Furthermore, plaintiffs have alleged no acts that could make The Jesup Group, the Jesup Group Defendants and/or Curd, Jr. liable without the necessary involvement of JJSG, Cunningham and/or Gebbia for conspiring to violate RICO, Section 10(b), Rule 10b–5 and to commit common law fraud. Indeed, the allegations in the

Amended Complaint refute any suggestion that these defendants' conduct encompassed more than a conspiracy with JJSG. *See* Beatus Am. Compl. ¶ 66 (The "Jesup Group; UPAC and the Jesup Group Defendants entered into a conspiracy with [JJSG], Gebbia and Curd, Jr.... [and SSC] joined such conspiracy."); *see id.* at ¶ 74.

In any event, plaintiffs' claims asserting a conspiracy by The Jesup Group and the Jesup Group Defendants to violate Section 10(b) and Rule 10b–5 must be dismissed in light of the Second Circuit's recent decision in *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 1998 WL 49315 (2d Cir.1998) (U.S. Supreme Court's decision in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), precludes private civil suit for conspiracy under Section 10(b) and Rule 10b–5).

The only remaining claims to be decided are state law fraud and conversion claims. Because all federal claims have been dismissed and no diversity exists, the court declines to exercise jurisdiction over these claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Therefore, the remaining state law claims in the *Beatus* action are dismissed.

## CONCLUSION

For the reasons set forth above, The Jesup Group, the Jesup Group Defendants, and Curd Jr.'s motion for summary judgment is granted and the remaining state law claims are dismissed. The Clerk of Court shall enter judgment for defendants and close the above-captioned action.

It is **SO ORDERED.**

("As controlling persons of [JJSG], the following Defendants are jointly and severally liable for the wrongs alleged in Count I [Section 10(b) and Rule 10b–5 claims] hereof: Gebbia, Cunningham, Curd, Sr., Curd, Jr., and [The] Jesup Group. As controlling persons of [SSC], the following Defendants are jointly and severally liable for the wrongs alleged in Count I hereof: [JJSG], Gebbia, Cunningham, Curd, Sr., Curd, Jr. and [The] Jesup Group."). Therefore, because the Beatus plaintiffs have alleged no acts which could otherwise establish a conspiracy not involving JJSG, Gebbia and Cunningham with respect to the non-contract claims asserted in the NYSE arbitration, the Court concludes that no rational fact finder could find that a conspiracy to commit the aforementioned acts could have existed without the participation of JJSG, Gebbia and/or Cunningham. Therefore, the Beatus plaintiffs' conspiracy claims must be dismissed.